**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 11-CR-237

**FIDEL TORRES-GOMEZ**
   **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Fidel Torres-Gomez pleaded guilty to unlawfully re-entering the United States after deportation, contrary to 8 U.S.C. § 1326, and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine what sentence is appropriate for the individual defendant in light of the statutory sentencing factors in 18 U.S.C. § 3553(a). Nelson v. United States, 555 U.S. 350, 351 (2009); United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 8 under U.S.S.G. § 2L1.2(a), then added a 16 level enhancement under § 2L1.2(b)(1)(A) because defendant was deported after sustaining a conviction for a felony crime of violence, producing an adjusted level of 24. The PSR then subtracted 3 levels for acceptance of responsibility under § 3E1.1, for a final level of 21. Coupled with defendant's criminal history category of IV, level 21 produced an imprisonment range of 57-71 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

## II. SECTION 3553

**A. Sentencing Factors and Methodology**

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id. This "parsimony provision" serves as the "'overarching' command of the statute." United States v. Ross, 755 F. Supp. 2d 1261, 1262 (S.D. Fla. 2010) (quoting Kimbrough v. United States, 552 U.S. 85, 101 (2007)).

The district court should in selecting the sentence begin with the guidelines' recommendation, see Gall v. United States, 552 U.S. 38, 49 (2007), but it may not presume that a guideline sentence is the correct one, Nelson, 555 U.S. at 352 (2009); Rita v. United States, 551 U.S. 338, 351 (2007), or even place "a 'thumb on the scale favoring a guideline

sentence.'" United States v. Pennington, 667 F.3d 953, 958 (7th Cir. 2012) (quoting United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007)).  Rather, the court must make an independent determination, considering the particular circumstances of the case, the types of sentences available, and the arguments of the parties.  See Gall, 552 U.S. at 49-50.  The district court is also free to reject any guideline on policy grounds, see United States v. Corner, 598 F.3d 411, 415 (7th Cir. 2010), particularly where the Commission failed to base the guideline at issue on study, expertise, empirical data, or national experience, see Kimbrough, 552 U.S. at 109; see also Pepper v. United States, 131 S. Ct. 1229, 1247 (2011) (holding that a district court may in appropriate cases impose a non-guideline sentence based on a disagreement with the Commission, particularly where the Commission's views rest on wholly unconvincing policy rationales); Spears v. United States, 555 U.S. 261, 264-54 (2009) (re-affirming district courts' authority vary categorically from the crack guideline).

**B.    Analysis**

    **1.    Nature of the Offense and Character of the Defendant**

Defendant was born in Guanajuanto, Mexico in 1983 and raised by his parents in that small town.  Defendant's father later came to the United States to work and send money back to the family, and defendant followed in 2000, settling with his father in Lake Geneva, Wisconsin.

In 2002, officials in Walworth County, Wisconsin charged defendant with several offenses, including child enticement, false imprisonment, and attempted second degree sexual assault of a child, all as a party to a crime.  According to the criminal complaint in that case, a fifteen-year-old girl reported to police that she had been at a party, smoking marijuana and

drinking alcohol with defendant (then age eighteen) and another man. She indicated that defendant and the other man brought her into a bedroom, refused to let her leave, and asked her to perform oral sex on them. When she refused, they pinned her to a bed and tried to pull down her pants, and the other man tried to force his penis into her mouth. She physically resisted, and the men left the room. Shortly thereafter, other men at the party, not including defendant, entered the room and raped her. For his involvement in the assault, the state court sentenced defendant to 1 year in jail and 6 years probation. Because he lacked lawful status in this country, immigration authorities deported defendant to Mexico on February 28, 2003.

Defendant returned to the United States in late 2009 or early 2010, and on September 29, 2011, Immigration and Customs Enforcement ("ICE") agents found him in the Walworth County Jail following his arrest on a criminal complaint and warrant issued in that County related to a violation of sex offender registration. A review of defendant's alien file disclosed that he never applied to, nor received permission from, the Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States. When he was arrested, defendant was using the name "Alex Flora," but a subsequent fingerprint analysis disclosed that defendant and the person convicted of the state offenses discussed above were the same.

In February 2012, the state revoked defendant's probation in the 2002 case (which never discharged due to his deportation placing him in "absconder" status), and the Walworth County Circuit Court imposed a sentence of 18 months initial confinement followed by 4 years of extended supervision. Defendant was also convicted of failure to maintain his sex offender registration in February 2012, with the state court imposing a 90 day sentence. Those state sentences were set to discharge on July 21, 2012, approximately three months after defendant appeared before me for sentencing.

Defendant indicated that he was sorry that he re-entered unlawfully, but he felt obligated to come back in order to be a good son and provide for his family, especially his father, who was ill and unable to work. Defendant's mother advised that defendant returned to the United States because he wanted to be near his parents and other family members. She indicated that he spent his time either working or with his family prior to his arrest in September 2011.

The PSR reported that defendant's oldest brother, Antonio, lives in Guanajuato, Mexico, as does his youngest brother, Ruben, but defendant's sister Maria, who lives in Lake Geneva, stated that the family had little contact with them. Maria also stated that defendant returned to the United States because he was unable to support himself in Mexico and had no family to help him.

Defendant was unmarried and had no children, and reported living with his parents in Lake Geneva from age fifteen or sixteen until his deportation at age nineteen. He again resided in Lake Geneva from his return in late 2009 or early 2010 until his arrest in September of 2011.

Defendant reported no physical or mental health issues, or substance abuse problems of significance. He admitted using marijuana in his late teens and early twenties, but he stated that he only smoked about twice a year and did not feel that he ever had a drug abuse problem (although he did admit being under the influence the night he was involved in the sexual assault). Defendant reported completing grade school in Mexico and enrolling in high school in Lake Geneva, Wisconsin when he moved to the United States, but he stopped attending after his arrest in the sexual assault case and denied any further schooling. Defendant reported working at Target in Lake Geneva under the name Alex Lara prior to his 2011 arrest. While in Mexico, he worked at a shoe factory for two years and on a farm for three years.

**B.     The Guidelines and Purposes of Sentencing**

The guidelines called for a prison term of 57-71 months, and the government recommended a sentence within that range.  While I agreed that a prison sentence was needed to promote respect for the law and to deter defendant and others from entering unlawfully, for two primary reasons, I found a sentence below the range sufficient.

First, as I and other judges across the country have noted, U.S.S.G. § 2L1.2 suffers from significant flaws, in that it requires a colossal 16 level enhancement in many cases, an increase the Sentencing Commission has never adequately explained, and it does so based on prior convictions rather than offense conduct, effectively counting the defendant's prior record twice in constructing the guideline range.  See, e.g., United States v. Escolastico-Pena, No. 11 Cr. 81-01, 2011 WL 4448956, at *5-6 (S.D.N.Y. Sept. 26, 2011); United States v. Garcia-Jaquez, 807 F. Supp. 2d 1005, 1011-16 (D. Colo. 2011); United States v. Carballo-Arguelles, 446 F. Supp. 2d 742, 745 (E.D. Mich. 2006), aff'd, 267 Fed. Appx. 416 (6th Cir. 2008); United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 962-63 (E.D. Wis. 2005); see also Doug Keller, Why the Prior Conviction Sentencing Enhancements in Illegal Re-Entry Cases are Unjust and Unjustified (And Unreasonable Too), 51 B.C. L. Rev. 719, 729-42 (2010) (setting forth a history of the guideline).  This enhancement does not target recidivist immigration offenders, such as those who unlawfully re-enter multiple times, or those who re-enter with the purpose of committing new crimes, which might make more sense.  Instead, it simply requires a huge offense level increase, based simply on the nature of the defendant's prior conviction, which may or may not have anything to do with the instant offense, and may or may not say anything

6

about the risk he currently poses.[1]

As the Seventh Circuit recently noted,

> It has been observed by even strong defenders of the guidelines that the sentencing ranges called for under the guidelines for unlawful reentry cases are often unreasonably harsh and disproportionate to the seriousness of the offense. See, e.g., Paul G. Cassell, Too Severe?: A Defense of the Federal Sentencing Guidelines (and a Critique of the Federal Mandatory Minimums), 56 Stan. L. Rev. 1017, 1019 (2004) (expressing view that immigration sentences are too severe). And, . . . it is clear under Kimbrough and Spears that district courts have sufficient flexibility to vary from the harsh sentences called for by the guidelines in appropriate cases[.]

United States v. Reyes-Hernandez, 624 F.3d 405, 420-21 (7th Cir. 2010). I found it appropriate to discount the guidelines' advice in this case.

In so doing, I noted that in defendant's case the 2002 conviction that produced the 16 level enhancement also produced, in one form or another, all 7 of his criminal history points:

---

[1] To put this enhancement in context, a fraud defendant would have to cause a loss of more than $1,000,000 to receive a 16 level increase. See U.S.S.G. § 2B1.1(b)(1)(I). A bank robber who discharged a firearm and caused permanent or life-threatening injury and stole more than $1,500,000 would receive total enhancements of 16 levels. U.S.S.G. § 2B3.1(b). As indicated in the text, the Commission provided no explanation for an increase of this magnitude in immigration cases. Perhaps it could be argued that a longer sentence is warranted to deter re-entry by those aliens convicted of serious crimes, as they present a greater threat to the American public. However, to the extent that the criminal history axis fails to address this concern, it is unclear why an increase of 16 offense levels would be needed. In comparison, the guideline applicable to the status offense of felon in possession of a firearm, U.S.S.G. § 2K2.1, contains base offense level increases for those defendants previously convicted of crimes of violence and/or drug trafficking offenses (presumably based on the added risk they may pose with a gun), but the § 2K2.1 increase – from level 14 to level 20 (for one such conviction) – is paltry compared to the enhancement for crimes of violence and certain drug offenses imposed under U.S.S.G. § 2L1.2(b)(1)(A) on those who are merely present in the country unlawfully. It is true that the Commission has somewhat ameliorated the harshness of this enhancement by providing more graduated increases based on the nature of the prior conviction, see U.S.S.G. § 2L1.2(b)(1)(B)-(D), and last year it implemented a change based on whether the prior conviction scores criminal history points, see United States Sentencing Commission Guidelines Manual, Appendix C – Volume III 404-05 (2011) (amendment 754), but those changes did not apply in this case.

7

3 for the sentence, 2 because he was on supervision for the 2002 case when he committed the instant offense, and 2 for failing to register as a sex offender based on the 2002 conviction. The 2 points he received under U.S.S.G. § 4A1.1(d) for being on supervision represented something of a quirk, as the 2002 probationary sentence would have long been discharged had he not been deported, which prevented him from reporting and essentially put him in absconder status, tolling the time; this also made it possible for the state court to revoke and sentence him to prison, which increased the original sentence score from 2 points to 3. Without the 2002 case, the range would have been 0-6 months. To be clear, I did not find it appropriate to ignore the 2002 case, but I did not see how that case could reasonably bear the weight of these guideline increases – 16 levels and 7 points.

Turning specifically to the 2002 case, I found it a serious matter based on the details set forth in the PSR, recounted above. However, I took into account the fact that it appeared defendant was not the principal actor of the two who initially attempted to assault the girl, and he was not among those who later entered the room and actually assaulted her. The fact that the state court judge initially imposed a sentence of 1 year jail and 6 years probation also suggested that the judge saw defendant's specific conduct as less serious, at least as compared to the others who participated in the assault. Again, I did not ignore this conviction, I simply found that it did not warrant the extreme weight the guidelines gave it.

Second, as I have also noted in other re-entry cases, it is appropriate to consider the defendant's motive for coming back and the nature of his conduct once he returned. Someone who returns to be with and support his family is generally more deserving of leniency than one who returns to commit crimes. See, e.g., United States v. Arguijo-Cervantes, 551 F. Supp. 2d 762, 765 (E.D. Wis. 2008) (collecting cases). It was undisputed in the present case that

8

defendant came back to reunite with and help support his family, rather than for the purpose of committing new crimes. While he was convicted of the registration violation on return, that was also a status offense, one not reflective of new, affirmative criminal conduct. Obviously, by registering defendant would have been revealing his unlawful presence in the country. That did not excuse his unlawful presence and failure to register, but it did cast his situation in a different light as compared to others who, for instance, commit new drug trafficking offenses once they re-enter.

In addition to attacking the guideline and noting his motive for re-entering, defendant also made a "fast track" argument for leniency. See Reyes-Hernandez, 624 F.3d at 417. Defendant conceded that he did not qualify for such relief under this district's recently created fast rack program, but he attempted to make the disparity showing required by United States v. Ramirez, Nos. 09-3932, 10-2190, 10-2689, 2011 WL 6450620 (7th Cir. Dec. 23, 2011). It appeared that defendant satisfied the basic requirements for consideration (in that he promptly pleaded guilty, agreed to a factual basis for the offense, and waived certain rights), and that he might qualify under at least some programs available in other districts. However, none of the programs under which he qualified supported a significantly lower sentence here. Under the data he supplied, it appeared that in the Northern District of California, the Western District of Washington, and in Oregon, defendant could have received a sentence of 30 months; in Nebraska, he qualified for a 2 level reduction to a range of 46-57; in North Dakota, he qualified for a 4 level reduction to a range of 37-46; and in the Southern District of Texas, a 2 level reduction (but with acceptance capped at 2 levels) to a range of 51-63. Therefore, while this was an argument I was permitted to consider, I declined to give it much weight in this case. In considering the totality of the § 3553(a) factors, I found mitigating defendant's decision to

9

quickly plead and waive certain rights. See Reyes-Hernandez, 624 F.3d at 420 ("[I]t is important to note that a district court could reach the decision of whether to depart from the guideline through the normal course of its § 3553(a) analysis without restating a fast-track 'unwarranted' disparity analysis.").

Defendant argued for a 3 month sentence, noting the time that he had already spent in state custody (and the time he had left to serve). I found that recommendation insufficient to promote respect for the law or to deter defendant and others. Notwithstanding his motives, and the presence of most of his family in this country, defendant had to understand that he could not come back to the United States without permission. The sentence had to be sufficient to send that message. At sentencing and in his pre-hearing memorandum, defendant discussed his plans for the future and desire to make a life in Mexico. I hoped that he was sincere in that desire because, absent a change in his legal status, he cannot make a life in this country.

Under all the circumstances, I found a sentence of 12 months and 1 day sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence was generally consistent with the Sentencing Commission's original approach in these types of cases, which was based on past practice, before the substantial enhancements discussed above were added (and as a result of which the average time served by immigration offenders nearly tripled). See U.S. Sentencing Commission, Fifteen Years of Guideline Sentencing 63-65 (2004).

Because defendant's undischarged state sentences were generally related to this case, in that he was revoked based primarily on his unlawful re-entry and his registration violation also stemmed from his unlawful presence in the country, I decided to run the federal sentence concurrently with the balance of the state sentences. The guidelines recommend consecutive

10

time when the undischarged sentence is based on a revocation, see U.S.S.G. § 5G1.3 cmt. n.3(C), but concurrent time can be reasonable when the revocation arises out of the instant offense conduct, see United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). However, I declined to make any sort of adjustment so as to make the terms fully concurrent, as that would have failed to satisfy the purposes of sentencing. Given the length of the instant sentence, and the timing, this provided a significant additional punishment, sufficient to satisfy the factors set forth in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3 cmt. n.3(A).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 12 months and 1 day running concurrently with his state sentences. Based on his financial situation, I determined that he lacked the ability to pay and thus waived a fine. I also declined to impose any supervised release, consistent with U.S.S.G. § 5D1.1(c), based on his likely removal. Other terms and conditions of the sentence are found in the judgment.

Dated at Milwaukee, Wisconsin, this 24th day of April, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

11